# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL L. WINSTON,

      Plaintiff,

v.

ERIN QUANDT and OFFICER MARIO DANTZLER,

      Defendants.

Case No. 16-CV-1420-JPS

**ORDER**

**1. INTRODUCTION**

Plaintiff proceeds against Defendants in this action on a single claim—deliberate indifference to his risk of suicide, in violation of his rights under the Eighth Amendment. (Docket #9 at 5; Docket #20 at 1; Docket #26). All parties have filed motions for summary judgment. Defendant Erin Quandt ("Quandt") filed her first motion on June 22, 2017 on procedural grounds, namely Plaintiff's failure to exhaust his administrative remedies, which is a prerequisite to this lawsuit. (Docket #52). On August 9, 2017, she filed a second motion directed at the substance of Plaintiff's claim. (Docket #101). Defendant Mario Dantzler ("Dantzler") also filed a substantive motion on September 1, 2017. (Docket #120).[1] Plaintiff submitted his own motion on July 10, 2017, seeking judgment against both Defendants. (Docket #85). For the reasons explained below, Defendants' substantive motions must be granted, and this action must therefore be dismissed.

---

[1] Plaintiff had previously identified Dantzler only as "Officer Danzler."

2.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.  **ANALYSIS**

The Court will address each party's motions in separate sections. For clarity, the Court will also discuss the facts relevant to each motion within the appropriate section. All facts are drawn from the applicable factual briefing unless otherwise noted.

### 3.1 Quandt's Motions

The Court has considered Quandt's first motion on exhaustion of administrative remedies and, standing alone, would grant that motion. If the Court did so, it would be required to dismiss Plaintiff's claim against Quandt without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004). As discussed below, Quandt's second, substantive motion must also be granted. This would warrant dismissal with prejudice. The Seventh Circuit holds that in this scenario, with the parties having a full opportunity to conduct discovery and litigate the claims presented, it is a far more efficient use of judicial and party resources to address the substantive summary

judgment motion and dismiss the claim with prejudice. *See Fluker v. County of Kankakee*, 741 F.3d 787, 793-94 (7th Cir. 2013). The Court will do so here, addressing the merits of Quandt's second motion and denying the first motion as moot.

### 3.1.1 Plaintiff's Failure to Dispute the Material Facts

The facts relevant to Quandt's second motion are undisputed because Plaintiff failed to dispute them. In the Court's scheduling order, entered February 13, 2017, Plaintiff was warned about the requirements for opposing a motion for summary judgment. (Docket #13 at 3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. In Quandt's motion for summary judgment, she too warned Plaintiff about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #101). He was provided with additional copies of those Rules along with the motion. (Docket #101-1). In connection with her motion, Quandt filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #103). It contained short, numbered paragraphs concisely stating those facts which Quandt proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

In response, Plaintiff submitted a two-page brief on September 7, 2017. (Docket #127). The brief states that it is intended as his "reply to defendants Quandt motion for summary judgment (Dkt. 101-103)." *Id.* at 127. Plaintiff further states that he "hereby stands by his own motion for summary judgment (Dkt. 85-87). He believes that he can argue the facts or legal conclusions no further. Plaintiff believes that his reply brief in support of his own motion for summary judgment is sufficient as a response to

either defendants motion for summary judgment." *Id.* at 1-2. The brief makes no attempt to actually respond to Quandt's statements of fact. *See generally id.*

Plaintiff's belief is incorrect. In addressing Quandt's motion, Plaintiff was obligated to submit a response to her statement of facts in accordance with the procedural rules which were provided to him more than once. Instead, Plaintiff ignored those rules by failing to properly dispute Quandt's proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). This failing is particularly egregious in light of Plaintiff's demonstrated ability to submit an appropriate response to a statement of facts. *See* (Docket #71, #74, #83, #125, and #135). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem Quandt's facts undisputed for purposes of deciding her second motion for summary judgment.[2] *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

---

[2]To find that Plaintiff has adequately disputed the facts Quandt presents with her second motion, the Court would first need to determine which facts he would likely want or need to dispute. Next, the Court would have to search though all of the evidence, including all parties' factual submissions throughout the case, to find appropriate bases to dispute those facts. This is clearly untenable and goes far beyond the Court's duty to liberally construe *pro se* filings. To do so would be to abandon the Court's role as a neutral arbiter of the parties' disputes, to instead become Plaintiff's advocate.

### 3.1.2 Relevant Facts

At all times relevant, Plaintiff's primary place of incarceration has been Columbia Correctional Institution. On April 21, 2016, Plaintiff was transferred to the Milwaukee County Jail (the "Jail") so that he could appear in state court for proceedings in a criminal case. During that time, Quandt was employed as a "Psych Social Worker" ("PSW") in the Jail. Prior to working at the Jail, Quandt obtained a master's degree in social work and certification as an advanced practice social worker. While at the Jail, Quandt received job training in the form of department meetings and shadowing more experienced PSWs. Quandt's duties as a PSW included addressing suicide crisis calls, wherein she would assess the distressed inmate and determine how best to handle their mental health issues. During her time at the Jail, Quandt would often handle three of these suicide crisis calls per day.

On April 22, 2016, Plaintiff was placed on suicide watch. The next day, Quandt was called to Plaintiff's cell to handle an active suicide attempt. She had no previous interactions with Plaintiff. When she arrived at his cell, Quandt learned that Plaintiff had taken a string from his mattress and wrapped it around his neck. He was not actually suspended from the string at that point, but instead merely standing on his tip toes.

Plaintiff told Quandt that if he was not taken to the special needs unit of the Jail, he would bang his head on the cell's sink. Quandt explained that the protocol for addressing that threat was to tie him to his bed using arm and leg restraints (known as "RIPP" restraints). Quandt was not actually authorized to order that an inmate be placed in RIPP restraints, but could recommend that based on her review of the situation. Her

recommendation would be based on balancing the need to keep the inmate safe with the desire to impinge as little as possible on their civil liberties.

In her professional judgment, Plaintiff's situation did not warrant RIPP restraints. She noted that Plaintiff had not, and did not, actually bang his head on the sink at any time. Further, Quandt knew that RIPP restraints may have caused more harm than good with respect to Plaintiff's mental health. Indeed, at the time of her evaluation, Quandt felt that RIPP restraints would have been unethical, given that Plaintiff was not actively attempting to harm himself. Finally, she believed that the restraints would have been an unwarranted infringement on Plaintiff's civil liberties. Quandt's decision was also influenced by information provided by security staff. They informed Quandt that Plaintiff's mattress would be replaced with a special suicide watch mattress, which would limit Plaintiff's ability to use the mattress for self-harming activities. When Quandt left Plaintiff's cell, he no longer had anything in his possession by which he could readily continue his suicide attempts. After she left, Quandt had no further interaction with Plaintiff or any involvement in his care.

Before Quandt left, security staff noted that Plaintiff was to remain on suicide watch, rather than be transferred to the special needs unit. Quandt herself had no authority to grant Plaintiff's request for a transfer to the special needs unit. Further, she believed the officers' decision posed no additional threat to Plaintiff's health or safety. Quandt concluded that a transfer to the special needs unit would not actually aid Plaintiff's mental health treatment. Instead, she determined that Plaintiff was attempting to manipulate the system in an effort to move to that unit. Plaintiff's "suicide attempts," namely threatening to bang his head, and tying a thin string around his neck while standing on the floor, rang hollow to Quandt. The

special needs unit, as its name implies, houses particularly vulnerable or mentally disturbed inmates. In Quandt's experience, when someone like Plaintiff takes extreme measures to force a move to the unit, transferring that inmate to the unit can jeopardize the safety of the other special needs inmates.

### 3.1.3 No Reasonable Jury Could Conclude that Quandt was Deliberately Indifferent to Plaintiff's Risk of Suicide

Plaintiff claims that Quandt's actions reflected deliberate indifference to his risk of suicide, in violation of his rights under the Eighth Amendment. To show deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). With respect to self-harming or suicidal behavior, the Court of Appeals holds that suicide satisfies the "serious medical condition" element. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). The *Collins* court provides further relevant instruction:

> Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk. [*Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)]; *see also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take his own life and must fail to take reasonable steps to prevent the inmate from performing the act).

> With respect to the first showing, "it is not enough that there was a danger of which a prison official should have been aware," rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack*, 226 F.3d at 529 (emphasis added). In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life. *Id.*; [*Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001)] (issue is whether the defendant was subjectively "aware of the substantial risk that [the deceased prisoner] might take his own life"). Liability cannot attach where "the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk." *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001).
>
> . . .
>
> [As to the second showing], [d]eliberate indifference requires a showing of "more than mere or gross negligence, but less than the purposeful or knowing infliction of harm." *Matos*, 335 F.3d at 557; *Estate of Novack*, 226 F.3d at 529. We have characterized the required showing as "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. *Matos*, 335 F.3d at 557. A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] ... his action must be reckless before § 1983 liability can be found." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003).
>
> . . .
>
> [In sum,] [t]he deliberate indifference standard imposes a "high hurdle" for a plaintiff to overcome.

*Collins v. Seeman*, 462 F.3d 757, 761-62 (7th Cir. 2006).

In light of these holdings, Quandt is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim. First, there is no evidence that she was subjectively aware of a serious risk of Plaintiff committing

suicide. Rather, based on her professional judgment, she believed his risk was low. His alleged suicide attempts were, relatively speaking, not overly serious. In fact, Quandt thought that Plaintiff's real goal was to manipulate his way into the special needs unit, where he would assumedly get better treatment than in his current housing assignment.

Second, her response to Plaintiff's suicide risk fell far short of "a total unconcern for [his] welfare." *Duane*, 959 F.2d at 677. Quandt carefully weighed the benefits and burdens of RIPP restraints and decided against recommending them. Further, Plaintiff was to remain on suicide watch and his potentially harmful mattress was replaced with a safer one. When she left Plaintiff, Quandt had no reason to believe that his risk of suicide remained serious.

As noted above, Plaintiff cannot rely on his briefing for the other summary judgment motions to dispute the facts material to this motion. The Court will, nevertheless, consider the relevant legal arguments presented in his reply in support of his own motion, as he requested. Plaintiff maintains that Quandt's conduct was "unreasonable" because: 1) he had a history of "self-destructive tendencies;" 2) replacing the mattress did not address the "head banging" issue; 3) Jail policy allegedly dictates that Plaintiff should have been transferred to the special needs unit; and 4) there was available space in the special needs unit for him. (Docket #124 at 3-4).

None of these contentions has merit. First, Plaintiff has not shown that Quandt was aware of his "tendencies" or that these would have affected her professional judgment. Second, Quandt could have completely eliminated the "head banging" concern with RIPP restraints, but applied her professional judgment in balancing the true need for the restraints

against Plaintiff's overall mental health and his civil liberties. Third, adherence or non-adherence to an institution's policies does not establish a violation of an inmate's constitutional rights. *Lewis v. Richards*, 107 F.3d 549, 553 n.5 (7th Cir. 1997). Fourth, the space available in the special needs unit was irrelevant; Quandt's decision not to recommend a transfer was not based on whether space was available.

Plaintiff's other primary argument is that in response to another suicide crisis which occurred later on April 23, 2016, a different PSW recommended RIPP restrains and Plaintiff's transfer to the special needs unit. (Docket #124 at 6-7). In his view, this demonstrates that Quandt's medical judgment departed from accepted professional standards. *Id.* The Seventh Circuit holds, however, that "a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Plaintiff does not contest that Quandt's interaction was limited to the first suicide crisis that day. The other PSW was presented with a different scenario, including knowledge that Plaintiff had a previous suicidal incident earlier in the day, and applied his judgment accordingly. A mere difference of opinion between two professionals on Plaintiff's treatment, at different times and under different circumstances, does not show that Quandt's actions were "so far afield of accepted professional standards as to raise the inference that [they] was not actually based on a medical judgment." *Id.*

The undisputed facts are such that no reasonable jury could find Quandt to have been deliberately indifferent to Plaintiff's suicide risk in her single interaction with him on April 23, 2016. Namely, Quandt has shown that she exercised her professional judgment in determining what care

Plaintiff should be provided, and Plaintiff's arguments to the contrary are unavailing. Quandt's second motion for summary judgment must be granted.

### 4.2 Dantzler's Motion

On September 1, 2017, Dantzler filed his one and only motion for summary judgment, addressing the substance of Plaintiff's claim against him. As quoted above, Plaintiff's September 7, 2017 filing states that it is intended to serve as a response to *both* Defendants' summary judgment motions. (Docket #127 at 2). In light of that representation, Dantzler filed a reply in support of his motion on September 21, 2017, claiming that Plaintiff had failed to dispute his statements of fact. (Docket #133).

However, on September 28, 2017, Plaintiff submitted a response to Dantzler's statement of facts, unaccompanied by a legal brief. (Docket #135). This submission was within the thirty-day period for responses to summary judgment as provided in this District's Local Rules. *See* Civil L. R. 56(b)(2). Defendant suggests that the Court should not take the factual response into account, (Docket #138 at 5), and considering Plaintiff's representation in his September 7 filing, this might be the proper thing to do. The Court will, nevertheless, generously consider the factual response; Plaintiff's disputes of fact are not sufficient to avoid summary judgment. As before, the Court will look to Plaintiff's reply in support of his own summary judgment motion for applicable legal argument. *See supra* pg. 3-4, 9.

### 4.1.2 Relevant Facts

Dantzler worked as a correctional officer during Plaintiff's April 2016 spell at the Jail. At no time was he involved in determining Plaintiff's housing assignments or classification status. On April 22, 2016, Plaintiff was

placed on suicide observation status by a PSW (not Quandt). Plaintiff was sent to Pod 4D, an area for inmates with mental health issues or who were on suicide observation status. The pod also houses inmates who have had disciplinary problems. The disciplinary status inmates are allowed an hour of recreation time per day, but the suicide observation inmates are not (to avoid opportunities for self-harm).

Dantzler worked the first shift in Pod 4D on April 23, 2016. The officer's station has floor-to-ceiling windows which separate it from the pod itself. Dantzler states that these are one-way windows, but Plaintiff contends that he can see an officer's face while they are in the station. From the officer's station, Dantzler had a partially obstructed view of Plaintiff's cell. Dantzler says that during the shift, he did not see any other inmates passing contraband or other dangerous items to Plaintiff during his shift. Dantzler further avers that he never knowingly allowed any inmate to provide anything to Plaintiff. Plaintiff counters with a sworn statement that Dantzler saw another inmate pass him a bed sheet,[3] and that Dantzler mockingly told Plaintiff to kill himself.

Dantzler and the other Pod 4D officers performed suicide checks every fifteen to twenty minutes throughout their shift to minimize the inmates' ability to attempt suicide. During one such check, Plaintiff was found attempting to hang himself with a string tied to the cell's ceiling. Plaintiff was never actually free-hanging from the string at any time; at

---

[3]Plaintiff's dispute on this point is oddly couched. In one paragraph of his affidavit, Plaintiff affirmatively states that Dantzler saw another inmate pass the bed sheet. (Docket #87 ¶ 6). Later, he says that "[i]t would have been impossible" for Dantzler to miss the transaction because it happened directly in front of the officer's station. *Id.* ¶ 10. The second statement casts doubt on the veracity of the first, but the Court need not grapple with the issue to grant summary judgment.

most, he was standing on his tip toes. Dantzler did not know that Plaintiff had a string and never observed one during his many earlier suicide checks. Later in the day, after Dantzler's shift ended, Plaintiff attempted to hang himself with a bed sheet. As noted above, Plaintiff claims that he obtained the bedsheet during Dantzler's shift. Dantzler reiterates that he had not observed Plaintiff with a bed sheet during his shift, and did not see any other inmates give Plaintiff a bed sheet. Plaintiff does not dispute that he did not tell Dantzler that he possessed the bed sheet or that he intended to use it to attempt suicide.

### 3.1.3 No Reasonable Jury Could Conclude that Dantzler was Deliberately Indifferent to Plaintiff's Risk of Suicide

Plaintiff asserts the same type of deliberate indifference claim—indifference to a risk of suicide—against Dantzler, as he did to Quandt. The overarching cause of action, as defined by *Collins*, remains the same. *Collins*, 462 F.3d at 761-62. On the facts presented, Plaintiff cannot maintain his claim against Dantzler. As the parties have done, the Court will address the two suicide attempts separately. As to the string hanging incident during Dantzler's shift, Plaintiff does not dispute that Dantzler performed regular suicide checks on Plaintiff and never knew that Plaintiff had the string. These facts show that far from being indifferent to Plaintiff's risk of suicide, Dantzler was doing all he could to actively abate the risk.

Plaintiff's theory on the bed sheet incident appears to be as follows. Dantzler allowed an inmate to pass a bed sheet to Plaintiff, and mockingly told him to kill himself. These actions were deliberately indifferent to his risk of suicide, which did not manifest itself immediately, but instead culminated later that day. This theory does evince deliberate indifference.

The first deliberate indifference prong requires evidence that Dantzler knew—rather than merely should have known—of a significant likelihood that Plaintiff might imminently seek to commit suicide. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003). Plaintiff has offered no evidence that Dantzler knew of a significant likelihood that Plaintiff would imminently use the bed sheet in a suicide attempt. Rather, Plaintiff admits that he never told Dantzler that he intended to use the bed sheet to hurt himself. *See Pittmann ex rel. Hamilton*, 746 F.3d at 776–78 (even an inmate's affirmative request for mental health attention "does not, standing alone, put a prison officer on notice of the imminent possibility of suicide.").

At best, the bed sheet presented an unspecified risk of potential future harm. This is not the serious and imminent risk of suicide contemplated by *Collins* and *Estate of Novack*. Dantzler's allowing Plaintiff to keep the bed sheet does not demonstrate a total unconcern for Plaintiff's welfare, particularly in combination with his regular suicide checks. *Duane*, 959 F.2d at 677. Viewing the facts in Plaintiff's favor, Dantzler's conduct may have been negligent, but negligence cannot support a deliberate indifference claim. Likewise, as to Dantzler's comment (which was certainly inappropriate if it was in fact made), it too was merely negligent and fails to show Dantzler's actual knowledge of an imminent risk of harm.

Plaintiff's arguments to the contrary are unavailing. First, he states that Dantzler lied to medical staff about him being suspended from the string during his first suicide attempt. Plaintiff alleges that Dantzler told staff that he was not suspended, when in fact "plaintiff was suspended to the point where only the tips of his toes touch the ground." (Docket #124 at 8) (quotation omitted). This is a semantic distinction without a difference.

Whether on his toes or the soles of his feet, Plaintiff was not free-hanging from the string at any point. In any event, the key facts for the string hanging incident are Dantzler's lack of knowledge of the string and his regular suicide checks, neither of which Plaintiff disputes. Second, Plaintiff accuses Dantzler of violating Jail policy by failing to write a report on the incidents. *Id.* As discussed above, institutional policies, particularly procedural ones such as this, do not define constitutional rights. *Lewis*, 107 F.3d at 553 n.5. Dantzler's motion for summary judgment must be granted.

### 4.3 Plaintiff's Motion

Because Defendants' motions have been granted, Plaintiff's is rendered moot. It will therefore be denied as such.

## 5. CONCLUSION

On the undisputed facts presented, both defendants are entitled to summary judgment. This action must, therefore, be dismissed with prejudice. The Court will deny as moot Plaintiff's pending motion to strike.

Accordingly,

**IT IS ORDERED** that Defendant Erin Quandt's first motion for summary judgment (Docket #52) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Erin Quandt's second motion for summary judgment (Docket #101) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Officer Mario Dantzler's motion for summary judgment (Docket #120) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #85) and motion to strike (Docket #136) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of October, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge